## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

SUSAN CALLAGHAN, individually and on behalf
of all others similarly situated,

    Plaintiff,                                     CASE NO. _____

vs.

  TRAVELERS COMMERCIAL INSURANCE
COMPANY,

    Defendant.

_____/

### NOTICE OF REMOVAL

Defendant, Travelers Commercial Insurance Company ("Defendant"), hereby removes to this Court the state court action *Callaghan v. Travelers Commercial Insurance Company*, Case No. 2019-CA-8927, filed in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida. This Court has jurisdiction over said action under the Class Action Fairness Act ("CAFA"), 18 U.S.C. §1332(d).

### BACKGROUND

1. On July 24, 2019, Plaintiff served Defendant with the Complaint in this action. In compliance with 28 U.S.C. § 1446(b), this Notice of Removal is filed within thirty days after service of said Complaint..[1]

---

[1] A copy of the Civil Cover Sheet is attached as **Exhibit 1**. A copy of all process, pleadings, orders, and other papers or exhibits of every kind on file in the state court at the time of this removal, which includes the Complaint, is attached hereto as **Exhibit 2**.

2.      Plaintiff alleges she is an insured under an automobile policy issued by Defendant, which provides coverage for actual cash value ("ACV") in the event of a total loss. (Compl., ¶¶ 13, 20.)  Plaintiff alleges that when Defendant adjusts total loss claims it uses the CCC system to determine the ACV, which Plaintiff alleges results in a violation of Fla. Stat. 626.9743.  (Compl., ¶¶ 21-34.)

3.      According to Plaintiff, Defendant's use of the CCC system resulted in its starting point of a "Base Vehicle Value of $9,946, derived from 12 comparable vehicles -- a valuation which Plaintiff claims was too low given that the comparable vehicles had advertised prices ranging from a low of $7,800 to a high of $11,995.  (Compl., ¶ 39.)  With additional adjustments using CCC, Plaintiff alleges Defendant's payment amount for her vehicle was $8,887.38.  (Compl., ¶ 41 & Ex. B.)

4.      Plaintiff further alleges that, under Florida law, actual cash value is defined as replacement cost less depreciation.  (*Id.,* ¶ 20.)  Plaintiff alleges that fees totaling $83.25, for title transfer ($75.25), license plate/registration transfer ($4.50), registration service charge ($2.50) and air pollution control ($1.00), and dealer fees, are part of the replacement cost of a total loss vehicle because they are required to be included in an ACV payment, but that Defendant failed to pay her or the putative class any amounts for these fees.  (*Id.*, ¶¶ 35, 41.)  In addition, Plaintiff alleges that when a vehicle is declared a total loss it still has salvage value, and that Defendant required Plaintiff to transfer ownership of her totaled vehicle but failed to pay any amount for salvage value, and where insureds retained their salvage vehicles Defendant improperly deducted amounts for salvage value.  (*Id.*, ¶¶ 36-37.)

5.    Plaintiff asserts three Counts on behalf of herself and a putative class:  Count I - seeking a declaratory judgment that: (a) Defendant's use of the CCC system violates Florida law; (b) Defendant is required to pay "title/license fees" in the amount of $83.25 (*i.e.,* the title transfer ($75.25), license plate/registration transfer ($4.50), registration service charge ($2.50) and air pollution control ($1.00) fees about which she complains) as well as dealer fees; and (c) Defendant is required to pay the salvage value of total loss vehicles (*id.,* ¶¶ 64-81); Count II -- breach of contract for failure to pay "title/license" fees (*id.,* ¶¶ 82-85); and Count III -- breach of contract for failure to pay salvage value (*id.,* ¶¶ 86-89).   The putative class is defined as:

> [A]ll individuals who: (a) on or after the date five years before this Complaint is filed; (b) are or were covered by a Travelers Florida personal automobile insurance policy; (c) made a claim under the Collision or Comprehensive coverage of that policy for damage or loss to a covered vehicle which Travelers accepted and treated as a total loss claim; and (d) Travelers paid the claim or offered to pay the claim (which offer remains unaccepted) on a cash payment basis with the actual cash value derived from the CCC system (hereafter the "Class"). The class period will be from five years before the date this Complaint is filed to the date of class certification (hereinafter the "Class Period").

(Compl., ¶ 51.)

## I.    THE COURT HAS JURISDICTION UNDER CAFA.

6.    This Court has jurisdiction over this action under CAFA, because this is a putative class action with more than 100 putative class members that are seeking to recover in excess of $5,000,000 in the aggregate, and there is minimal diversity.

7. CAFA reflects Congress's intent to have federal courts adjudicate substantial class action suits brought against out-of-state defendants, such as this case. When CAFA was passed, it expanded federal jurisdiction over class actions by amending 28 U.S.C. § 1332 to confer upon federal courts original jurisdiction over cases where (a) the putative class contains at least 100 class members, (b) any member of the putative class is a citizen of a State different from that of any defendant; and (c) the amount in controversy exceeds $5,000,000 in the aggregate for the entire class, exclusive of interest and costs. 28 U.S.C. § 1332(d).

8. This suit satisfies all of the requirements for federal jurisdiction under CAFA in that: (1) the putative class exceeds 100; (2) at least one member of the proposed class has a different citizenship from Defendant; (3) the amount in controversy exceeds $5,000,000; and (4) none of the exceptions to CAFA jurisdiction applies. *See* 28 U.S.C. § 1332(d); s*ee also Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1121-23 (11th Cir. 2010) (setting forth CAFA requirements).

   **1. The Putative Class Size Exceeds 100.**

9. CAFA requires that the proposed class consist of at least 100 persons. 28 U.S.C. § 1332(d)(5). That requirement is satisfied here.

10. A review of Defendants' records indicates that there are more than 700 (approximately 782) individuals with total loss claims implicated by Plaintiff's class definition. (Declaration of Andrew Mayernick ("Mayernick Dec."), **Exhibit 3** hereto, ¶ 5.)

11.    Specifically, from July 25, 2014 to the present there were in Florida approximately 782 individuals with total loss claims that were paid by Defendant where the CCC system would have been used as a tool as part of the claim adjustment process.  (*Id.*)

12.    That alone shows there are plausibly over 100 class members.   This is sufficient to support removal.  *See, e.g., Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547, 550 (2014) (removal notice need only plausibly allege, not detail proof of, the amount in controversy); *Dudley v. Eli Lilly & Co.,* 778 F.3d 909, 912 (11th Cir. 2014) ("all that is required is a short and plain statement of the grounds for removal, including a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.") (citations and internal quotation omitted).

13.    In sum, Plaintiff's putative class encompasses more than 100 members.

**2.    There is Minimal Diversity Sufficient to Establish CAFA Jurisdiction.**

14.    The second CAFA requirement is minimal diversity, which requires that at least one putative class member must be a citizen of a state different from one defendant.  28 U.S.C. § 1332(d)(2).  Under CAFA, a corporation is a citizen of the state where it has its principal place of business as well as the state under whose laws it is organized.  28 U.S.C. § 1332(d)(10).

15.    Plaintiff alleges she is a citizen of Florida.  (Compl., ¶ 13.)  Plaintiff purports to represent a class that includes Florida total loss claimants.  ( Compl., ¶ 51.)  Defendant is incorporated under the laws of Connecticut with its principal place of business in Connecticut, *see* (Mayernick Dec., ¶ 4), and is therefore a citizen of that State for diversity purposes.  28 U.S.C. § 1332(c)(1).  Thus, there is clearly minimal diversity here as at least

one class member is a citizen of Florida and Defendant is not a citizen of Florida, so this prerequisite to CAFA jurisdiction is also met.  28 U.S.C. § 1332(d)(2).

     **3.    The CAFA Amount in Controversy Requirement of $5,000,000 is Satisfied.**

     16.    CAFA requires that the amount in controversy exceed $5,000,000 for the entire putative class in the aggregate, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).

     17.    As the removing party, Defendant bears the burden of establishing the CAFA amount in controversy requirement is met by a preponderance of the evidence; it must show it is "more likely than not" that the amount in controversy exceeds the jurisdictional requirement.  *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 768 (11th Cir. 2010).  To meet its burden, a removing party may provide "specific factual allegations establishing jurisdiction and can support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations . . . .  [A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it."  *Id.* at 754.  *See also Dudley,* 778 F.3d at 913 (same principle)  Moreover, "at the jurisdictional stage, the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover. . . .  The amount in controversy is not proof of the amount the plaintiff will recover.  Rather, it is an estimate of the amount that will be put at issue in the course of the litigation."  *Dudley,* 778 F.3d at 913 (citations and internal quotations omitted).  *See also Vorce v. Int'l Fellowship of Chaplains*, No. 8:18-CV-2810-T-33AAS, 2019 WL 276196, at *3 (M.D. Fla. Jan. 22, 2019) ("the plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in

the case, not how much the plaintiffs are ultimately likely to recover. . . .  The amount in controversy "is not proof of the amount the plaintiff will recover.  Rather, it is an estimate of the amount that will be put at issue in the course of the litigation.") (citation and internal quotation omitted); *Egbert v. Auto Club Family Ins., Co.,* No. 1:19CV133-GMB, 2019 WL 1573693, at *2 (M.D. Ala. Apr. 11, 2019) ("The amount in controversy inquiry, however, does not require proof of what a plaintiff ultimately will recover, but instead turns on the amount that will be at issue during the case.") (citing *South Fla. Wellness, Inc. v. Allstate Ins. Co.,* 745 F.3d 1312, 1318 (11th Cir. 2014)).

18.    In meeting its burden on removal, a removing defendant need not submit detailed evidence with its removal notice, but need only show plausibly that removal jurisdiction exists.  *Dart,* 135 S. Ct. at 554.  Similarly, a removing defendant may meet its burden based on reasonable extrapolations.  *See Pretka* 608 F.3d at 754.

19.    In *Argentine v. Bank of Am. Corp.,* No. 8:15-CV-957-T-26MAP, 2015 WL 3793868, *2 (M.D. Fla. June 18, 2015), for example, the court found the following extrapolations supported removal:

> Plaintiff alleged in the complaint that his personal damages, which were typical of all class members, equaled $64.00, the difference between redemption for a credit of one cent per dollar ($160.00 for 16,000 points) and six-tenths cent per dollar ($96.00 awarded for 16,000 points).  Defendants assert that Plaintiff's allegation that his claim is typical of the claims of each member of the class, together with the injunctive relief as alleged, permits them to extrapolate the $64.00 for the almost 150,000 Florida cardholders for a total that exceeds the $5 million requisite.

*Id.* (footnotes omitted).  The court in *Argentine* determined that the "amount in controversy advocated by the Defendants in this case, based on the complaint, notice of removal, and other evidence provided at the time of removal, [was] not too speculative so that reasonable deductions and inferences dictate an accurate estimation of over $5 million dollars." *Id.*, *3.

20.    In *Perret v. Wyndham Vacation Resorts, Inc.*, No. 11–CV–61904, 2012 WL 592171 (S.D. Fla. Feb. 22, 2012), the plaintiffs alleged the defendants' time-share sale transactions were misleading and deceptive and that the management costs assessed by the defendants were excessive and unreasonable.  After the defendants removed the case under CAFA, the plaintiffs sought remand on the ground that the amount in controversy requirement had not been met.  The court rejected the plaintiffs' argument, stating:  "The amount in controversy can be facially apparent from the pleading itself, even when the complaint does not claim a specific amount of damages."  *Id.,* *2 (citations and internal quotations omitted).  The court held:

> In this case, the amount in controversy is facially apparent from the Amended Complaint.  Paragraph 10 of the Amended Complaint states, in part, "[t]he amount of *each individual* claim in controversy exceeds $15,000.00, exclusive of interest and costs." (emphasis added).  The Amended Complaint further states, at paragraph 26, "Plaintiffs are informed and believe that potentially thousands of Floridians and non-Floridians have purchased timeshare vacations from Wyndham."  Thus, $15,000 in damages per individual claim times 1000, or more, individual class members is $15,000,000 in damages, well over the $5,000,000 threshold for CAFA jurisdiction.

*Id.,* *2.

21.   In *Lee-Bolton v. Koppers Inc*., 848 F. Supp. 2d 1342, 1354 (N.D. Fla. 2011), the plaintiff landowners in an area bordering a wood treatment facility brought a state-court class action against the defendants, alleging defendants' activities in connection with the wood treatment facility caused the contamination of surrounding properties.  The defendants removed the case to federal court under CAFA, and the plaintiffs moved to remand, arguing, among other things, that the amount in controversy requirement was not met.  The court explained that the "question is not how much the plaintiff will ultimately recover in the case, but instead 'the pertinent question is what is *in controversy* in the case.'"  *Id.* (quoting *Pretka*, 608 F.3d at 751) (emphasis in original).  The court found that, "[w]hile Plaintiffs have included claims for five common-law causes of action in addition to their claims for violation of the WQAA and for injunctive and equitable relief, in its simplest form this case is really about the damage that has occurred to the class members' properties as a result of the purported discharge of chemical pollutants from the Koppers Site."  *Id.* at 1355.  Based on the property records submitted by the defendants, the court found that, based on an average assessed value of approximately $88,000 per property, with 87 parcels at issue, the amount in controversy was $7,722,100 in the aggregate for all putative class members.  *Id.*

22.   "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective."  *Cohen v. Office Depot, Inc.,* 204 F.3d 1069, 1077 (11th Cir. 2000) (citation omitted).  In the insurance context, the "value of the right to be protected is the [insurer's] potential liability under the policy, plus potential attorneys' fees, penalties, statutory damages

and punitive damages." *Prime Ins. Syndicate, Inc. v. Soil Tech Distributors, Inc.,* No. 05-cv-280, 2006 WL 1823562, at *3 (M.D. Fla. June 30, 2006) (quotations omitted).

23.    Further, the value of the declaratory relief sought necessarily includes the value of any recovery that could be sought by the class because a declaration by this Court will establish how payments should have been calculated for the putative class period. *See, e.g., South Florida Wellness, Inc., v. Allstate Insurance Co.*, 745 F.3d 1312, 1318 (11th Cir. 2014). In equitable relief cases generally, the court must look to the "value of the object of the litigation measured from the plaintiff's perspective" in determining the amount in controversy. *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000). "Stated another way, the value of declaratory relief is 'the monetary value of the benefit that would flow to the plaintiff if the [relief he is seeking] were granted.'" *South Florida Wellness,* 745 F.3d at 1316 (quoting *Morrison*, 228 F.3d at 1268) (alteration in original). *See also Krugman-Kadi v. Wells Fargo Bank, N.A.,* No. 1:13-CV-204-MW-GRJ, 2013 WL 6388636, at *4 (N.D. Fla. Dec. 6, 2013) (the court should look at the Plaintiff's "ultimate goal" to determine the monetary value of a case seeking equitable relief).

24.    Here, based upon Plaintiff's Complaint allegations and theories (which Defendant disputes, but which control for removal purposes), the $5,000,000 CAFA amount in controversy requirement is satisfied.

25.    Plaintiff seeks a declaration that Defendant violated Florida law by adjusting total loss claims using the CCC system. Here, the total gross amount Defendant paid for physical damage collision/comprehensive coverage on the 782 total loss claims where CCC was used as a tool in connection with the claim adjustment process was approximately

$8,000,000. (Mayernick Dec., ¶ 6.) On that basis alone, the amount in controversy requirement is met without more, since the result of the relief Plaintiff seeks would put this entire amount in controversy.

26.     In addition to the above, however, an alternative calculation not putting the entire $8,000,000 set forth above as the amount in controversy also shows that the amount in controversy requirement is met here. Based on Plaintiff's Complaint allegations, Defendant's payment to her in the amount of $8,887.38 resulted in an underpayment of potentially as much as 26%, given her allegation that the high value for a comparable vehicle was $11,995. (Compl., ¶¶ 39, 41 & Ex. B.) Applying the approximate 26% underpayment to the above-referenced $8,000,000 gross amount paid for the 782 total loss vehicle claims at issue results in $2,080,000.

27.     Plaintiff also seeks a declaration that Defendant be required to pay salvage value on total loss claims (and also asserts a breach of contract count based on failure to pay for salvage value). The total gross amount Defendant recovered on salvage sales for salvage amounts Defendant retained on the above-referenced total loss claims was approximately $1,500,000. (Mayernick Decl., ¶ 7.) This further increases the amount in controversy to $3,580,000 (and this does not include the alleged wrongful failure to compensate for owner retained salvage, which would increase the amount in controversy even further)..

28.     In addition, Plaintiff seeks a declaration that Defendant be required to pay dealer fees and "title/license" fees as part of a total loss payment (and also asserts a breach of contract claim based on Defendant's failure to pay "title/license" fees). The average dealer fee per claim for the applicable period was approximately $675. *See, e.g.* P. Reed, *What Are*

*Car Dealership Documentation Fees?*, https://www.edmunds.com/car-buying/what-are-car-dealership-documentation-fees.html (May 7, 2015) ("Florida has the highest average doc fee, calculated by Edmunds.com to be $675, but some Florida dealers charge as much as $999."), which increases the amount in controversy by $527,850 ($675 X 782), to $4,107,850. As noted, Plaintiff also seeks a total of $83.25 per class member for "title/license" and other fees. This adds an additional $65,101.50 to the amount in controversy ($83.25 X 782), increasing it to $4,172,951.50.

29.     Accordingly, based on the above figures alone, without attorneys' fees, and not including potentially higher dealer fees and potential amounts for owner retained salvage, which would only increase the amount in controversy, the amount in controversy is approximately $4,172,951.50 ($2,080,000 + $1,500,000 + $527,850 + $65,101.50).

30.     Plaintiff also seeks attorneys' fees. Attorneys' fees may be awarded against insurance companies under certain circumstances. *See* Fla. Stat. § 627.428. Although Defendant disputes that Plaintiff is entitled to any such award, for purposes of removal Plaintiff's request for attorneys' fees is properly considered in ascertaining the amount in controversy. *See, e.g., Sheffield Woods at Wellington Condo. Ass'n v. Scottsdale Ins. Co.,* No. 09cv1148, 2009 WL 2255219, at *1 (M.D. Fla. July 28, 2009) (denying motion to remand; amount in controversy was met based in part on potential for attorneys' fees under Fla. Stat. § 627.428). Here, then, the possibility of attorneys' fees further increases the amount in controversy. Indeed, courts often award attorneys' fees in the amount of 30% in class actions. *See, e.g., Lytle v. Lowe's Home Centers, Inc.*, No. 8:12-CV-1848-T-33TBM, 2014 WL 6469428, at *3 (M.D. Fla. Nov. 17, 2014) (noting courts often award fees at 30%

of the class recovery amount); *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) (same). *See also Vision Constr. Ent., Inc. v. Argos Ready Mix, LLC,* No. 3:15CV00534-MCR/CJK, 2016 WL 6987009, at *1 (N.D. Fla. Nov. 7, 2016) (denying motion to remand; including 30% fee calculation as part of amount in controversy)).

31.    If attorneys' fees are of 30% are added to the above amounts, that adds $1,251,885.45 to the $4,172,951.50 calculated in paragraphs 26-29 above, which puts the amount in controversy over $5,000,000 under this alternative calculation as well, even without considering the cost to Defendant of complying with any injunctive or declaratory relief granted in this matter, which would increase the amount in controversy even more over $5,000,000.

32.    For all the foregoing reasons, it is evident that the $5,000,000 CAFA amount in controversy requirement is satisfied.

### 4.    None of the CAFA Exceptions Applies.

33.    Plaintiff bears the burden of establishing any applicable exceptions to CAFA jurisdiction. *See, e.g., In re Brican Am. LLC Equip. Lease Litig.,* No. 10-MD-02183-PAS, 2011 WL 13115472, *3 (S.D. Fla. Mar. 11, 2011).    CAFA provides two mandatory exceptions and one discretionary exception to the application of federal jurisdiction.    28 U.S.C. § 1332(d)(3)-(4).    None of these exceptions applies here.    Each CAFA exception requires, as a starting point, an in-state defendant.    28 U.S.C. § 1332(d)(3)-(4) (requiring either "significant relief" to be sought from an in-state defendant (local controversy exception), or requiring the "primary defendant" to be an in-state one ("home state" and discretionary exceptions).    Here, the only named Defendant is not a citizen of Florida.

**CONCLUSION**

For all the foregoing reasons, Defendant respectfully requests this Court to assume full jurisdiction over the cause herein, as provided by law.

Dated: August 22, 2019

>**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
>SunTrust Center
>200 South Orange Avenue, Suite 2900
>Orlando, FL  32801
>Phone: 407-422-6600
>Fax: 407-841-0325
>*Counsel for Defendants*
>
>By: /s/ *Hal K. Litchford*
>     Hal K. Litchford, Esquire
>     Florida Bar No. 272485
>     *hlitchford@bakerdonelson.com*
>       *rgustafson@bakerdonelson.com*
>      *fedcts@bakerdonelson.com*
>     Kyle A. Diamantas, Esquire
>     Florida Bar No. 106916
>     *kdiamantas@bakerdonelson.com*
>      *sdenny@bakerdonelson.com*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 22, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

>/s/ *Hal K. Litchford*
>     Hal K. Litchford

14