## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**SUSAN CALLAGHAN**, individual and on
behalf of all those similarly situated,

Plaintiff,

vs.

**TRAVELERS COMMERCIAL INSURANCE
COMPANY**,

Defendant.

_____/

Case No: :19-cv-1633-Orl-78LRH

## PLAINTIFF'S MOTION FOR REMAND AND
## INCORPORATED MEMORANDUM OF LAW

Plaintiff, SUSAN CALLAGHAN, individually and on behalf of all others similarly

situated (hereinafter referred to as "Plaintiff"), by and through undersigned counsel and pursuant

to 28 U.S.C. §1447(c), hereby files this Motion for Remand and Incorporated Memorandum of

Law in response to the Notice of Removal filed by Defendant, Travelers Commercial Insurance

Company (hereinafter collectively referred to as "Travelers" or "Defendant"), and in support states

as follows:

## INTRODUCTION

This class action arises out of Travelers' improper adjustment of total loss claims. Plaintiff

filed a three-count lawsuit in Florida state court. Count I seeks a declaratory judgment that: (a)

Defendant's use of the CCC system violates Florida law; (b) Defendant is required to pay

"title/license fees" in the amount of $83.25 (the title transfer ($75.25), license plate/registration

transfer ($4.50), registration service charge ($2.50) and air pollution control ($1.00) fees), as well

as dealer fees; and (c) Defendant is required to pay its insureds the salvage value of the total loss

*Callaghan v. Travelers Commercial Insurance Company*
Civil Case No. 6:19-cv-01633-WWB-LRH
 - Plaintiff's Motion for Remand and Incorporated Memorandum of Law

Page 1

vehicles it takes from them (id., ¶¶ 64-81); Count II alleges breach of contract for failure to pay "title/license" fees (id., ¶¶ 82-85); and Count III alleges breach of contract for failure to pay salvage value (id., ¶¶ 86-89). The Complaint also seeks certification of the following class:

> [A]ll individuals who: (a) on or after the date five years before this Complaint is filed; (b) are or were covered by a Travelers Florida personal automobile insurance policy; (c) made a claim under the Collision or Comprehensive coverage of that policy for damage or loss to a covered vehicle which Travelers accepted and treated as a total loss claim; and (d) Travelers paid the claim or offered to pay the claim (which offer remains unaccepted) on a cash payment basis with the actual cash value derived from the CCC system  (hereafter the "Class"). The class period will be from five years before the date this Complaint is filed to the date of class certification (hereinafter the "Class Period")

Travelers removed this matter pursuant to 28 U.S.C. §§ 1446 and 1453 asserting that the Court has original jurisdiction over this claim pursuant to the Class Action Fairness Act, 18 U.S.C. §1332(d), because: (a) the putative class consists of more than 100 members; (b) Plaintiff and Travelers meet the requirements for diversity of citizenship; and (c) the amount in controversy requirement is satisfied.[1]  Plaintiff does not dispute that there are over 100 persons in the class or that there is diversity of citizenship, but she asserts that Travelers has failed to sustain its burden of proof that the amount in controversy exceeds $5,000,000.00.

In support of its claim that it satisfies the amount in controversy requirement for diversity jurisdiction, Travelers relies upon an affidavit from Andrew Mayernick, who states he reviewed Traveler's claims data and determined that from July 25, 2014, through August 1, 2019, there were approximately 782 claims for total losses paid by Travelers in Florida where the CCC system would have been used as a tool to adjust the claim.[2] Travelers then purports to calculate the potential amounts recoverable in connection with those 782 claims.

---

[1] ECF Doc. 1 ¶¶ 6-32
[2] ECF Doc. 1-2.

The most important estimate lies in the Motion for Removal where it states "Accordingly, based on the above figures alone, without attorneys' fees, and not including potentially higher dealer fees and potential amounts for owner retained salvage, which would only increase the amount in controversy, the amount in controversy is approximately $4,172,951.50."[3] Recognizing that on its best day the amount in controversy is only approximately $4.2 million, Travelers urges the Court to add an additional $1,251,885.45 in attorneys' fees to the amount in controversy in order to surpass the $5 million minimum.

Defendant's amount-in-controversy calculation, on its face, does not meet CAFA's requirement to trigger federal jurisdiction over this matter for two reasons. First, the Court cannot count potential attorneys' fees after the date of removal in calculating the amount in controversy. Even if it could count potential attorneys' fees, Travelers bases the amount on a legal fallacy. Second, Travelers' calculation of the potential damages has no basis in Plaintiff's allegations or in reality. Accordingly, the Court should remand this case.

## STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994), which only possess power that is authorized by the Constitution and by statutes. *Id.* There is a presumption that a case lies outside this limitation, and the burden of establishing the contrary rests on the party asserting jurisdiction. *Id.* The Class Action Fairness Act (CAFA) has not altered the basic standard of review pertinent to motions to remand actions removed to federal court. A federal district court must remand to the state court any case that was removed improvidently or without the necessary jurisdiction. *Lowery v. Alabama*

---

[3] *Id*. ¶¶ 30-32.

*Power Company*, 483 F.3d 1184, 1207 (11th Cir. 2007); *Miedema v. Maytag Corporation*, 450 F.3d 1322, 1330 (11th Cir. 2006).

The determination of the appropriateness of removal is based on the allegations of the plaintiff's complaint and the record at the time the case was removed. *Tapscott v. M.S. Dealer Service Corp.*, 77 F.3d 1353, 1359 (11th Cir. 1996); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). The court is also limited to the specific facts and arguments asserted in the Notice of Removal and accompanying documents. *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1212 (11th Cir. 2007). If that evidence is insufficient to establish that removal was proper or that jurisdiction was present, neither the defendant nor the court may speculate in an attempt to make up for the notice's failings. *Id.* at 1212-13.

Finally, CAFA has not changed the burden of proof for removal, and the **burden of proof here remains on Travelers**, as the removing party, to demonstrate that this action was properly removed to federal court. *Miedema*, 450 F.3d at 1330. Moreover, "[w]here, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must provide by a **preponderance of the evidence**" that the amount in controversy exceeds the jurisdiction requirement." *Id.* at 1330 (citing *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001)) (emphasis added).

While recently the Supreme Court did determine that an uncontroverted good-faith allegation by the defendant as to the amount in controversy satisfied the $5 million minimum, the Court held that a plaintiff is still able to dispute a good-faith allegation and conduct discovery, if necessary, to dispute the defendant's allegation. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 135 S. Ct. 547, 553 (2014). Moreover, the Court reiterated that the defendant has the burden of proof to establish the amount in controversy by a preponderance of the evidence

when it is controverted and that a case must be remanded when the evidence provided by the defendant to support removal falls short of that burden. *Id*. at 553-54.

## I.     TRAVELERS HAS NOT PROVEN BY A PREPONDERANCE OF THE EVIDENCE THAT THE AMOUNT IN CONTROVERSY IS MORE THAN $5 MILLION

Recognizing that its estimate for the amount in controversy on its best day only amounts to slightly over $4.1 million dollars[4], Travelers cobbles together several different elements of damages to arrive at an amount in controversy in excess of $5,000,000.00.   However, the Defendant's assertions are contrary to the evidence, contrary to the law and based on pure speculation.

### A.     The Supposed Amount of Attorney's Fees Does Not Support the "Amount in Controversy" in this Matter

Attorneys' fees can count towards the amount in controversy in connection with insurance claims asserting the recovery of those fees pursuant to a statute.[5] However, only those amounts of fees expended as of the date of removal are included in the jurisdictional amount.[6] Moreover, to include the amount of attorney fees to the amount in controversy, the party asserting jurisdiction, must establish the amount of fees based on a *preponderance of the evidence*.[7]

---

[4] Plaintiff does not concede that amount is correct, as it is vastly overstated.

[5] *Federated Mut. Ins. Co. v. McKinnon Motors, LLC,* 329 F. 3d 805. 808 n.4 (11th Cir. 2003)

[6] *Rogatinsky v. Metro. Life Ins. Co.*, 2009 WL 3667073, at *1 (S.D. Fla. 2009); *Lott v. Friedland, P.A. v. Creative Compound LLC,* 2010 WL 2044889, at *4 (S.D. Fla. 2010); *Waltemyer v. Northwestern Mut. Life Ins. Co.,* 2007 WL 419663, at *2 (M.D. Fla. 2007) ("The general rule is that the amount in controversy is determined at the time of removal, and subsequent matters that affect the amount will not divest the court of jurisdiction.").

[7] *See, e.g., Baker v. Nextel S. Corp.,* 2009 WL 1703276, at *1 (S.D. Fla. May 26, 2009)  (finding that speculation about attorneys' fees and punitive damages fails to satisfy the amount in controversy requirement); *Wisely v. Allstate Ins. Co.,* 2006 WL 2189125, at *2 (M.D. Fla. Aug. 1, 2006) (declining to consider attorney's fees in determining the amount in controversy because the defendant failed to "put forth any evidence from which a specific amount of attorneys' fees can be ascertained. Therefore, if the Court were to consider Plaintiff's demand for attorneys' fees in

In its Notice of Removal, Traveler's asks this Court to assess $1,251,885.45 for attorney's fees towards the amount in controversy.[8] In support, Travelers cites to two cases which it claims support that attorneys' fees potentially recoverable after the date of removal may be included in the amount in controversy for purposes of CAFA.[9]

Specifically, Travelers cites to *Vision Constr. Ent., Inc. v. Argos Ready Mix, LLC*, No. 3:15-CV-00534 MCR/CJK, 2016 WL 6987009, at *1 (N.D. Fla. Nov. 7, 2016), for the "holding" that the plaintiff was denied remand and the court "included a 30% fee calculation."[10] In truth, the decision did not address attorneys' fees, stating, "the court need not address this argument because the amount in controversy has been established in excess of $5 million, separate and apart from the inclusion of attorney's fees."[11]

In addition, Travelers cites *Sheffield Woods at Wellington Condo. Ass'n v. Scottsdale Ins. Co.*, No. 09-cv-1148, 2009 WL 2255219, at *1 (M.D. Fla. July 28, 2009), in which the court held

---

calculating the amount in controversy, the amount assigned to Plaintiff's demand for attorneys' fees would be based on pure speculation, since the Court has no way of determining the amount of attorneys' fees."); *Smuland v. Unum Life Ins. Co. of Am.,* 2010 WL 1839106, at *1 (M.D. Fla. Apr. 30, 2010) (remanding case because party "failed to provide the Court with specific allegations as to the amount of attorneys' fees in question"); *see also Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1097 (11th Cir. 1994) (concluding that removing defendant did not meet burden of proving amount in controversy where it offered "nothing more than conclusory allegations").

[8] ECF No. 1 ¶ 31

[9] *Id.*

[10] ECF No. 1 ¶ 30

[11] *See Vision Construction Ent., Inc. v. Argos Ready Mix, LLC*, 2016 WL 6987009, *3 n.1 (N.D. Fla. 2016) stating "Vision raises a third argument that attorney's fees must be calculated at the time of removal, based on the Eleventh Circuit's decision in *Pretka*. Vision contends that Argos's inclusion of over one million dollars in attorney's fees is improper because the fees are based on a percentage of recovery, not hours worked, and are calculated through the end of the litigation, as opposed to the date of removal. *See generally Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010). **The court need not address this argument because the amount in controversy has been established in excess of $ 5 million, separate and apart from the inclusion of attorney's fees.**" (emphasis added).

---

attorneys' fees could be considered in determining the amount in controversy because the plaintiff

sought attorney fees under a specific statute. The court in that case, having already found that the

potential damages satisfied the amount in controversy, merely stated that it noted the plaintiff

sought relocation expenses and statutory attorneys' fees without addressing whether fees

potentially recoverable after removal could be included in calculating the amount in controversy.

*Id.* Of course, all the courts addressing the issue have held that a plaintiff's potentially recoverable

attorneys' fees for purposes of the amount in controversy should only include those incurred up to

the date a notice of removal is filed.[12] Further, Travelers' contention that Plaintiff could recover

30% of the maximum recoverable damages constitutes nothing more than the sort of conclusory

allegations regarding fees unsupported by any evidence uniformly rejected by the courts.[13]

---

[12] *Supra note 6.*

[13] *See, e.g., Biffar v. GCA Servs. Group, Inc.*, No. 8:15-cv-1154-T-33TGW, 2015 WL 4042103, at *3 (M.D. Fla. July 1, 2015) (because the court could "only speculate as to whether attorneys' fees would be awarded, … attorneys' fees should not be considered in the jurisdictional requirement calculation"); *Smuland v. Unum Life Ins. Co. of Am.*, No. 6:10-cv-281-Orl-28GJK, 2010 WL 1839106, at *1 (M.D. Fla. April 30, 2010) ("UNUM's reliance on its assumption as to the fees to be collected by Plaintiff's attorney is insufficient to meet UNUM's burden of proof. Accordingly, UNUM has failed to provide the Court with specific allegations as to the amount of attorneys' fees in question, and the request that this Court conduct the kind of 'impermissible speculation' that the Eleventh Circuit Court of Appeals has rejected in determining the amount in controversy will not be entertained.") (*citing Lowery*, 483 F.3d at 1220); *Abilities Rehabs. Ctr. Found., Inc. v. Mount Vernon Fire Ins. Co.*, No. 8:10-cv-1676-T-33TBM, 2010 WL 4723449, at *3 (M.D. Fla. Nov. 15, 2010) (granting the motion for remand because the amount of attorneys' fees that the plaintiff could be awarded was "purely speculative"); *Frith v. Auto-Owners Ins. Co.*, No. 8:08-cv-311-T-24TGW, 2008 WL 1897586, *2 (M.D. Fla. April 28, 2008) ("Although Plaintiff may ultimately amend his complaint to plead and recover punitive damages, as well as recover attorneys' fees and damages for mental anguish, the Court is unable to consider these additional damages at this time because to do so would be purely speculative."); *Wisely v. Allstate Ins. Co.*, No. 8:05-cv-1659-T-24MAP, 2006 WL 2189125, at *2 (M.D. Fla. April 1, 2006) (court would not consider the plaintiff's demand for attorneys' fees in calculating the amount in controversy because doing so would be "pure speculation");.

---

Indeed, Travelers bases its 30% figure on a legal fallacy. The cases it cites merely support that when calculating attorneys' fees recoverable by class counsel out of a common fund (i.e., recoverable from the class, counsel's clients, not from the defendant pursuant to a fee shifting statute), 30% of the fund may be appropriate. *See Lytle v. Lowe's Home Centers, Inc.*, 2014 WL 6469428, at *2-4 (M.D. Fla. Nov. 17, 2014) (treating as common fund the total of the amounts defendant agreed to pay to class and to class counsel and approving fees equal to 30% of that fund); *Ressler v. Jacobson*, 149 F.R.D. 651, 652 (M.D. Fla. 1992) (awarding class counsel 30% of a common fund). In contrast, Florida courts award attorneys' fees pursuant to Fla. Stat. § 627.428 on a lodestar basis. *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 n.5 (Fla. 1985); *Bell v. U.S.B. Acquisition Co., Inc.*, 734 So. 2d 403, 406-407 (Fla. 1999) (discussing *Rowe*) *Standard Guaranty Insurance Co. v. Quanstrom*, 555 So.2d 828 (Fla. 1990) (The "lodestar" methodology for determining attorney's fees applies where attorney's fees are awardable by statute). Any speculation by Travelers that Plaintiff's counsel's recoverable lodestar, if they succeed, would exceed $827,000.00 (the difference between $5 million and the maximum damages calculated by Travelers) could not meet their burden of proof on the amount in controversy.

**B.      No Evidence Supports the Largest Part of the Damages Calculated by Travelers in Attempting to Exceed the $5 Million Minimum**

The largest part of the approximately $4.2 million in damages calculated by Travelers consists of a $2.08 million figure based on Plaintiff's request for a declaratory judgment that Travelers' use of the CCC system to adjust total loss claims breaches the Policy and violates Florida law.[14] Travelers assumed such a declaration would mandate that it recalculate class members' payments, and it took the difference between the listed price of the highest priced

---

[14] ECF No. 1 ¶ 26; ECF 1-4, ¶¶ 39, 41 & Ex. B.

comparable vehicle used in Plaintiff's CCC Report and what it paid her, a 26% difference, and it multiplied that 26% by the $8 million gross amount it paid on class members' claims to reach $2.08 million.[15]

That calculation has no basis in the Complaint or reality. First, the $8 million includes sales tax, so multiplying 26% by the entire amount would be incorrect. Second, and more significantly, the Complaint only makes one allegation regarding the illegality of the CCC system that remotely suggests how much damages would result from recalculation – the invalidity of the Uniform Condition Adjustments.[16] Logically, and in the fashion which would add the most amount in dispute, the Complaint would require Travelers to only pay each of its insureds the full amount of any applied Uniform Condition Adjustment, plus the increase in applicable taxes on that value. If the Court assumes the Uniform Condition Adjustment in Callaghan's claim represents a reasonable proxy for the average Uniform Condition Adjustment to each class member, then Travelers would owe an extra $556.50 to each class member (consisting of a $525.00 Uniform Condition Adjustment and $31.50 of additional sales tax at the 6% Florida sales tax rate).[17] For 782 affected class members, the total amount in dispute over the Uniform Condition Adjustment is only $435,183 (782 x $556.50), far less than the $2.082 million figure used by Travelers.

So, even if attorneys' fees could be used, a damages calculation actually based on the Complaint and reality would not put the amount in controversy anywhere near $5 million required CAFA threshold.

---

[15] *Id.*
[16] ECF No. 1-3 at ¶ 25 & 33.
[17] ECF No. 1-4 at Ex. B, Pg's 9-11.

*Callaghan v. Travelers Commercial Insurance Company*
Civil Case No. 6:19-cv-01633-WWB-LRH
  - Plaintiff's Motion for Remand and Incorporated Memorandum of Law

Page 9

## <u>CONCLUSION</u>

The burden of proof is squarely on the Defendant to establish that the amount in controversy is in excess of $5,000,000.00.  At best, Travelers asserted that slightly over $4.1 million is in controversy in this matter. Accordingly, the Court must remand this matter back to the 9th Judicial Circuit in and for Orange County.

Respectfully submitted,

**THE JEEVES LAW GROUP, P.A.**
*/s/Scott R. Jeeves*
Scott R. Jeeves, Esquire FBN 0905630

*Callaghan v. Travelers Commercial Insurance Company*
Civil Case No. 6:19-cv-01633-WWB-LRH
 - Plaintiff's Motion for Remand and Incorporated Memorandum of Law

Page 10

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on **5th day of September 2019**, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF, which will send notification of such

filing to all counsel of record in this action.

*/s/Scott R. Jeeves*

Scott R. Jeeves, Esquire FBN 0905630
Primary Email: sjeeves@jeeveslawgroup.com
Secondary Email: khill@jeeveslawgroup.com
rmandel@jeevesmandellawgroup.com
**THE JEEVES LAW GROUP, P.A.**
954 First Avenue North
St. Petersburg, FL 33705
Telephone: (727) 894-2929

and

Alec H. Schultz, Esq. FBN 35022
**LEÓN COSGROVE, LLP**
255 Alhambra Circle, Suita 800
Coral Gables, FL 33134
Telephone: (305) 740-1975
Primary: aschultz@leoncosgrove.com

and

Craig E. Rothburd, Esquire FBN 49182
Email: craig@rothburdpa.com
       maria@rothburdpa.com
**CRAIG E. ROTHBURD, P.A.**
320 W. Kennedy Blvd., Suite 700
Tampa, FL 33606
Telephone: (813) 251-8800

and

Edward H. Zebersky, Esq. FBN 0908370
Mark S. Fistos, Esq. FBN 909191
**ZEBERSKY PAYNE, LLP**
110 S.E. 6th Street, Suite 210
Ft. Lauderdale, FL 33301

Telephone: (954) 989-6333
Primary: ezebersky@zpllp.com;
mfistos@zpllp.com; ndiaz@zpllp.com

Kenneth W. DeJean (La. Bar Roll No. 4817)
(*to appear pro hac vice*)
417 W. University Avenue (70506)
Post Office Box 4325
Lafayette, Louisiana 70502
Tel: (337) 235-5294
Fax: (337) 235-1095
kwdejean@kwdejean.com

**Attorneys for Plaintiff Susan Callaghan
and the Class**